Bentley Kassal, J.
This is a summary proceeding to recover possession of a decontrolled apartment based upon nonpayment of rent for the months of January and February, 1971. The total amount of claimed arrears is $140 for the two months.
In essence, tenant’s defenses are:
(1) Tenant had no liability for rent because of landlord’s breach of the warranty of habitability;
(2) There is a lack of consideration because landlord failed to maintain services and make repairs.
Tenant claims that these same conditions warrant the application of a stay under section 755 of the Real Property Actions and Proceedings Law and that tenant is entitled to a judgment on its counterclaim for $140, which is the rental amount for these months.
In addition, tenant contended at trial that the landlord corporation had breached its covenant of quiet enjoyment in that its president had made some unwarranted personal intrusions into the privacy of tenant’s use of the premises. There were two specific instances cited. While recognizing that they may *326 be offensive to tenant, I cannot hold that these facts, as proved, constitute a sufficient legal defense to this proceeding.
In November, 1970, the parties entered into an oral rental agreement for another apartment in this building, which did not become available. The tenant and her young daughter then moved into this apartment sight unseen. Two days later, she asked the landlord to make a number of needed repairs, but none were made either by the landlord or by the tenant.
Tenant’s proof at trial established that the following defective conditions existed in her apartment:
(1) Water leaked from a pipe connected to the toilet whenever the toilet was used.
(2) The toilet was not connected to the wall and needed to be reset.
(3) Water leaked from holes around the bathroom light fixture, so that when the upstairs tenant used his shower, water caused the bulb to burst.
(4) The light switch in the kitchen needed repair.
(5) There were roaches in kitchen.
(6) The door knob of the closet needed to be replaced.
(7) The apartment needed plastering and painting.
(8) The window frames were broken, and several glass panes were broken; defective insulation permitted cold air to come in from outside.
In addition, numerous violations had been filed against this building by the Department of Rent and Housing Maintenance and are still outstanding. The record of violations for February, 1971, placed in evidence, substantiates tenant’s testimony that the conditions in the bathroom and kitchen existed.
Landlord offered no evidence to rebut tenant’s case although the 1969 amendment to paragraph (a) of subdivision 1 of section 755 places the burden on landlord of disproving the condition as to recorded violations.
The tenant has satisfied me that the above-described conditions existed and, in my opinion, they have substantially diminished the habitability of the premises and, consequently, its value to tenant. Furthermore, the landlord has not made a bona fide effort to comply with the Housing Maintenance Code of the City of New York.
While recognizing that this is not the conventional approach to this problem in this jurisdiction, nevertheless, I believe that these circumstances warrant the application of the approach taken by Judge J. Skelly Weight of the United States Court of Appeals, District of Columbia Circuit, in his decision in Javins v. *327 First Nat. Realty Corp. (428 F. 2d 1071). In the Javins case (p. 1081), it was held that a lease is a contract and “ by signing the lease the landlord has undertaken a continuing obligation to the tenant to maintain the premises in accordance with all applicable law. This principle of implied warranty is well established. Courts often imply relevant law into contracts to provide a remedy for any damage caused by one party’s illegal conduct.”
I agree with the rationale of the learned Judge’s opinion in that the Housing Maintenance Code of the City of New York must be read into leasing contracts. Therefore, this Housing Maintenance Code implies a warranty of habitability into leases of all housing that it covers, measured by the standards which it sets out (p. 1082).
Since a lease is a contract, the tenant’s rental obligation is conditioned upon the landlord’s performance of his responsibilities, including the warranty that the premises will be maintained in a habitable condition. Accordingly, the usual contract remedies are available for a breach of the landlord’s warranty. If there were only one or two minor violations in these premises, I might judge them to be de minimis and not a sufficient justification for a reduction in rent.
I believe that this decision is merely a logical extension of the rationale applied in several recent decisions by my colleagues in this court. (Coda Control Co. v. Jiminez, L&T 11278/71 [May 10,1971], [Kelly, J.]; Jackson v. Rivera, 65 Misc 2d 468; Garcia v. Freeland Realty, 63 Misc 2d 937.) In these nonpayment cases, the court allowed tenants to set off their expenditures (or the value of their labor) for urgently needed repairs which the landlord failed to make after due notice. In each case the court found a breach of warranty of habitability. However, this warranty exists irrespective of any action by the tenant; and a tenant should not be obliged to make repairs as a precondition to the recognition that there is a warranty of habitability.
Accordingly, I find that the tenant’s damages for this partial failure of consideration, in light of the numerous and serious violations, amount to a 20% reduction in consideration, which means the sum of $14, based upon the $70 monthly rental. In making this determination, I have taken into consideration the probable approach of the Rent Commission of the City of New York if these premises had been rent-controlled and an application to reduce rent for nonrepair or reduction in services had been presented to it.
*328 In summary, I decide as follows:
(1) The conditions proved at the trial are dangerous to life, health and safety, as prescribed by section 755 (subd. 1, par. [a]) of the Beal Property Actions and Proceedings Law.
(2) The rent for which tenant is liable from January 1, 1971 until further order is $56 per month, which is computed by granting tenant a setoff of $14 monthly, representing tenant’s damages for the partial failure of consideration.
(3) Tenant, within seven days from the date of service of a copy of the stay order herein, shall deposit the sum of $112 with the clerk of this court representing tenant’s liability for the months of January and February, 1971.
,(4) I have simultaneously herewith signed an order under section 755 of the Beal Property Actions and Proceedings Law staying all proceedings by landlord hereunder.
As a last thought, in the event that landlord persists in failing to maintain the premises in a habitable condition in spite of the decision of this court, the tenant would be well-advised to consider the possibility of invoking the provisions of subdivision 3 of section 755 of the Beal Property Actions and Proceedings Law, added in 1969.